*134 MICHAEL, Circuit Judge,
dissenting from the denial of rehearing en banc:
I respectfully dissent from this court’s denial of rehearing en banc on the issue of whether the U.S. Army Corps of Engineers erred in approving permits that allow surface mining overburden to be placed into headwater streams, eliminating the streams and adjacent valleys. I recognize that it is not our role to second-guess the expertise of a regulatory agency, but we must nevertheless ensure that the Corps fulfills its duties under controlling law. In this case, the Corps has simply failed to do its job.
In the context of mountaintop removal mining, the Corps’ § 404(b) dredge and fill regulations require the agency to assess the “nature and degree of effect” that discharges of mining overburden into head-water streams will have “on the structure and function of the aquatic ecosystem and organisms.” 40 C.F.R. § 230.11(e) (2006). At a minimum, the regulations require some assessment of both stream structure and stream function. The Corps’ failure to assess stream function in this case and its later claim that an assessment of stream structure provides an adequate substitute cannot amount to a permissible construction of the regulations.
The ecological impact of filling headwater streams with mining overburden is both profound and irreversible. As the Corps itself acknowledges, “[i]t is well understood that the health of entire watersheds [is] dependent on functions provided by headwater streams.” J.A. 1823 (Black Castle combined decision document). The Corps goes on to explain that headwater streams provide a number of “important functions” including maintenance of natural discharge regimes, regulation of sediment export, retention of nutrients, processing of terrestrial organic matter, and exportation of water nutrients and organic matter to downstream areas. Id. The Corps does not credibly claim to have measured these functions for the permits at issue in this case.
Because the long-term environmental impacts of destroying headwater streams are not yet fully understood, permitting the filling of these streams without requiring the Corps to comply with its clear duty to assess functional impacts fatally undercuts the purpose of the regulations. The Corps’ Clean Water Act regulations require the agency to 'certify that any discharge of fill material will not cause or contribute to “significant degradation of the waters of the United States.” 40 C.F.R. § 230.10(c) (2006). Without the information provided by a functional assessment, the Corps cannot make that determination. No permit should issue until the Corps fulfills each distinct obligation under the controlling regulations. And this court should not defer to the Corps until the agency has done its job.
Judge MOTZ joins in this dissent.